# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| Missouri Department of Social Services | ) ASBCA No. 61121 |
| | ) |
| Under Contract No. W911S7-09-D-0029 | ) |

APPEARANCE FOR THE APPELLANT: Keith L. Baker, Esq.
    Baker, Cronogue, Tolle & Werfel, LLP
    McLean, VA

APPEARANCES FOR THE GOVERNMENT: Raymond M. Saunders, Esq.
    Army Chief Trial Attorney
    ChristinaLynn E. McCoy, Esq.
    CPT John M. McAdams III, JA
    Trial Attorneys

## OPINION BY ADMINISTRATIVE JUDGE MCILMAIL

In November 2016, we found appellant entitled, under Federal Acquisition Regulation (FAR) 52.249-2(1), to an equitable adjustment of the prices of the portion of its dining services contract that continued after the government terminated the contract in part by eliminating from the contract 6 of the 18 dining facilities originally covered. *Missouri Department of Social Services*, ASBCA No. 59191, 16-1 BCA ¶ 36,563 at 178,093, 178,095-96. Familiarity with that decision is presumed. Because the parties have not been able to settle upon quantum, we address that now.

## FINDINGS OF FACT

We found in the entitlement decision that:

> The record in this appeal contains evidence that the reduction in production hours caused by the termination of six facilities increased appellant's cost of performing the remaining work. Its original pricing proposal estimated 1,279,423 production hours for all 18 facilities per year, but after the elimination of six facilities the revised estimate of total production hours per year was 980,682. This would indicate that without an upward revision to the "retail rate" for Option Years 2 and 3, appellant would not recover all of its fixed costs. This is because when contract pricing is calculated using the same arithmetic as used in the original pricing proposal; the fixed costs have

not changed but the number of production hours has gone down, increasing the price per hour. The record indicates that the retail rate would have to increase from 23.8053 to 25.2242 for Option Year 2 and from 24.6301 to 26.4137 for Option Year 3 in order for appellant to recover its fixed costs to the extent provided for in its original proposal.

*Missouri Department of Social Services*, 16-1 BCA ¶ 36,563 at 178,095 (citations omitted). We also found that "[a]ppellant and the government entered into a different contract than existed after 6 October 2011—one that included 50% more dining facilities and 298,741 more production hours than did the contract after partial termination." *Id.* at 178,096.

During the entitlement hearing, appellant's expert testified that appellant had approximately $717,000 of unrecovered fixed costs in Option Year 2 and $805,054 of unrecovered fixed costs in Option Year 3.[*] *Missouri Department of Social Services*, 16-1 BCA ¶ 36,563 at 178,095. To put that in context, appellant's estimated revenue for Option Year 2 (that is, total cost and profit) was $30,457,068.71. *Id.* at 178,093. In developing its pricing for the original contract, appellant applied a profit rate of 3%. *Id.* The Defense Contract Audit Agency found that "the basis or theory of recovery of the costs in [the expert's report] is logical and the calculation is correct, but it is based on the estimated data" (R4, tab 153 at 5). Appellant's expert reprised his presentation at the quantum hearing, again reporting that based on proposed costs, appellant's unrecovered fixed costs (plus 3% profit) were $1,522,617 for Option Years 2 and 3 (R4, tab 167 at 8). On an incurred cost basis, he testified that appellant's unrecovered fixed costs (plus 3% profit) were $681,795 in Option Year 2 and $553,507 in Option Year 3, for a total of $1,235,302 (tr. 1/146; R4, tab 168 at 3).

Appellant incurred $73,125.75 in "settlement expenses"; that is, legal, clerical, and similar costs incurred for the preparation and presentation of its request for equitable adjustment and its partial termination settlement proposal (app. br. at 26). On June 24, 2013, appellant submitted to the contracting officer its certified claim for the increased costs of performing the remaining contract work. 16-1 BCA ¶ 36,563 at 178,094.

---

[*] This calculation was based on the original cost estimates used to price the contract.

## DECISION

Equitable adjustments are corrective measures utilized to keep a contractor whole when the government modifies a contract; to achieve this we must place the contractor as nearly as possible in the position in which it would have been absent the changes. *See New York Shipbuilding Co., A Div. of Merritt-Chapman & Scott Corp.*, ASBCA No. 16164, 76-2 BCA ¶ 11,979 at 57,427. Generally, that includes the contractor's entitlement to a fair profit. *See id.* In our entitlement decision, we found that "[a]ppellant and the government entered into a different contract than existed after [the partial termination] – one that included 50% more dining facilities and 298,741 more production hours," and remarked that, "[p]resumably, addressing such a change in the parties' expectations is the purpose of FAR 52.249-2(l)." 16-1 BCA ¶ 36,563 at 178,096.

Having already proved the fact of loss, appellant must now prove the amount of loss, but only with sufficient certainty so that the determination of the amount of damages will be more than mere speculation. *See Austin Logistic Services Co.*, ASBCA Nos. 60916, 61052, 18-1 BCA ¶ 36,948 at 180,049. The determination of an equitable adjustment is not an exact science; where responsibility for damage is clear, it is not essential that the damage amount be ascertainable with absolute or mathematical precision. *BAE Systems San Francisco Ship Repair*, ASBCA Nos. 58810, 59642, 16-1 BCA ¶ 36,404 at 177,503-04.

Our precedent favors the use of actual incurred costs, if possible, to determine the amount of an equitable adjustment. *BAE Systems San Francisco*, 16-1 BCA ¶ 36,404 at 177,501 (citing *Propellex Corp. v. Brownlee*, 342 F.3d 1335 (Fed. Cir. 2003); and *Advanced Engineering & Planning Corp.*, ASBCA Nos. 53366, 54044, 05-1 BCA ¶ 32,806 at 162,336). Based on the calculations proffered by appellant's expert, we find that appellant's unrecovered fixed costs due to the partial termination (plus 3% profit) amount to $1,235,302. This calculation is based on a review of appellant's actual incurred costs, which were adjusted downward by the expert in specific instances where they exceeded proposed amounts, thus avoiding recovery of increased costs not resulting from the partial termination.

The government has not proffered its own calculation of the amount of equitable adjustment due appellant. Its expert testified to various perceived potential deficiencies in appellant's quantum proof which, the government argues, means that appellant has not sustained its burden of proof (gov't br. at 22-28). The Board has considered the government's arguments, but does not find them persuasive; appellant has proved the amount of its loss with sufficient certainty.

The government also objects to inclusion of 3% profit in the adjustment amount, calling it "anticipatory profit" (gov't br. at 23). However, it is well established that an equitable adjustment includes a "fair and reasonable" amount for profit. *Bruce Construction Corp. v. United States*, 324 F.2d 516 (Ct. Cl. 1963); *Les Killgore's*

3

*Excavating*, ASBCA No. 32261, 86-3 BCA ¶ 19,117. Otherwise, the contractor is not made whole. *See also Aero Components Co.*, ASBCA No. 42620, 92-1 BCA ¶ 24,565 at 122,565. In developing its pricing for the original contract, appellant applied a profit rate of 3%, which we find to be fair and reasonable.

Appellant also seeks $73,125.75 in settlement expenses; that is, the legal and clerical fees and expenses it incurred for the preparation and presentation of its request for equitable adjustment and its partial termination settlement proposal (app. br. at 26). The government argues (gov't br. at 28) that appellant's request is not properly before us because we held that appellant's entitlement to an adjustment under FAR 52.249-2(l) mooted its claim under FAR 52.249-2(g). In *C.F.S. Air Cargo, Inc.*, ASBCA Nos. 36113, 36126, 91-1 BCA ¶ 23,583 at 118,245-46, we awarded settlement expenses in the context of an equitable adjustment following a partial termination for convenience. The government does not challenge the reasonableness of, or support for, the $73,125.75 in expenses (gov't br. at 28). Following *C.F.S. Air Cargo*, we award $73,125.75 in settlement expenses, which we find reasonable and supported.

## CONCLUSION

The appeal is sustained in the amount of $1,308,427.75, with interest under 41 U.S.C. § 7109, from June 24, 2013, the putative date that the contracting officer received appellant's certified claim.

Dated: January 17, 2019

TIMOTHY P. McILMAIL
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

LYNDA T. O'SULLIVAN
Administrative Judge
Acting Vice Chairman
Armed Services Board
of Contract Appeals

4

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 61121, Appeal of Missouri Department of Social Services, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals